**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **CASE NO. 4:25-CR-107** |
| | § | |
| **CHRISTO JESUS DE NASARETH** | § | |
| | § | |

**DEFENDANT'S MOTION TO DISMISS INDICTMENT**

TO THE HONORABLE DAVID COUNTS, DISTRICT JUDGE OF THE UNITED STATES FOR THE WESTERN DISTRICT OF TEXAS:

COMES NOW Defendant Christo Jesus De Nasareth, by and through undersigned counsel, and files this Motion to Dismiss the Indictment based on incompetency. Mr. Jesus De Nasareth has been detained since April 14, 2025, without trial for an illegal entry in violation of Title 18 U.S.C. § 1325 and for possession of a firearm by an alien in violation of Title 18 U.S.C. § 922(g)(5). Since that time, he has repeatedly been determined incompetent to stand trial. As of the filing of this Motion, he has additionally been found not restorable to competency and has been determined not to meet the criteria for civil commitment based on future dangerousness. Mr. Jesus De Nasareth, who has no criminal history, has already been detained in a Bureau of Prison facility for a period equivalent to the likely United States Sentencing Guideline range even in the event of conviction. For reasons of due process, a person who's mental condition is such that he lacks the capacity to understand nature and object of the proceeding against him, to consult with counsel, and assist in preparing his defense may not be subjected to trial. *Cooper v. Oklahoma,* 517 U.S. 348, 354-355 (1996); *Drope v. Missouri*, 420 U.S. 162, 171-172 (1975). Under these circumstances, the Court should dismiss this case.

## I. PROCEDURAL HISTORY AND BACKGROUND

According to government reports, Mr. Jesus De Nasareth was arrested by Border Patrol Agents the day after Palm Sunday, April 14, 2025, as he sojourned upon a dessert road dressed in layers of ragged clothing, weighed down by rusty chains and crude wooden crosses tied around his neck with strips of burlap. A body-worn camera captured Mr. Jesus De Nasareth's road-side encounter with the Border Patrol. *See* Exhibit 1. Counsel includes this Exhibit as it visually demonstrates Mr. Jesus De Nasareth's demeanor at the time of arrest. It does not appear evident why the officers felt the need to seize and conduct a *Terry* frisk of Mr. Jesus De Nasareth. However, upon seizure and search, instead of a scourge, Officers discovered a Smith and Wesson semiautomatic pistol tucked into one of Mr. Jesus De Nasareth's many layers. While Officers rummaged through Mr. Jesus De Nasarath's worldly possessions, they appeared to have difficulty communicating with Mr. Jesus De Nasareth. When asked about his birthdate, Mr. Jesus De Nasareth can be heard answering variously that he was born "before the earth," "before Christ," and "before the Old Testament." Prior to the discovery of the pistol, the Officer wearing the body camera can be heard making a radio call describing that "[w]e've got a strange individual out here by Palo Amarillo…I have no clue about this guy. He's got like 10 different layers on, but he's not really giving us any information. So we're just gonna temporarily detain him, bring him back to the station so we can roll him. He's not really giving us any information right now, but he doesn't really speak any language." *See* Exhibit 1. While the Officers cut the crosses from Mr. Jesus De Nasareth's neck, he told the officers that he has family in "Mexico, Texas, Kansas" and that he was walking to Kansas. When asked where he was born, he told the Officers that he was born in "Belen" (Spanish for Bethlehem). The Officers noted that Mr. Jesus De Nasareth was speaking "gibberish." When asked if he had any form of identification, he answered "Kansas, Consulado

Texas, English, French, Mexican." When asked why he possessed a gun and knife, he repeatedly answered "cadet." Throughout the encounter, Mr. Jesus De Nasareth appears to be compliant and serene. *See* Exhibit 1. The Border Patrol's I-213 Medical Screening indicates that the "subject has mental health concerns and claims to be Jesus Christ of Nazareth."

A detention hearing was held on April 29, 2026. Counsel for Mr. Jesus De Nasareth raised the issue of lack of identity as a fundamental defect in a federal prosecution based on national origin. The Court granted the government's motion to detain Mr. Jesus De Nasareth without bond. Counsel filed as sealed Motion for Competency Evaluation which the Court granted and a sealed Motion for Timely Hospitalization. *See* ECF #13, 14, 15 and 18. The Court received the initial psychiatric report. *See* ECF #16 and 17. The Court held an Identity Hearing on May 15, 2025. *See* ECF # 19. The only information offered by the government regarding identity was that Mr. Jesus De Nasareth was previously encountered by the Border Patrol under the name "Cristo Raba de Ravino" (Christ Rabbi of the Ravine) near Fort Hancock, Texas on August 12, 2023 and was given a "voluntary departure" to Mexico.[1] After the Identity Hearing, the Court found that Mr. Jesus De Nasareth's true name is "Cristo Jesus De Nasareth." On the same day, the Court also entered an

[1] Counsel for Mr. Jesus De Nazareth advises the Court that Mr. Jesus De Nasarath's true identity is unknown but is likely not "Christo Jesus De Nasarath." During the pendency of this case, Counsel for Mr. Jesus De Nazareth endeavored to discover his true identity and requested the assistance of the Mexican consulate to identify him with the use of his photographs and biometric identifiers, without success. On information and belief, the U.S. Marshals Service also attempted further identification, also without success. During the pendency of his hospitalization commitment, despite daily interaction with B.O.P. forensic staff, including psychologists, doctors, nurses, and social workers, Mr. Jesus De Nazareth has never provided any reliable information regarding his place of birth, family members, or personal history. Counsel has been unable to elicit any such information from Mr. Jesus De Nazareth. Although the government produced a report during the Identity Hearing that Mr. Jesus De Nasareth was previously encountered by the Border Patrol under near Fort Hancock, Texas on August 12, 2023 and was given a "voluntary departure" to Mexico, this appears to be a non-judicial "voluntary departure" undertaken at the discretion of officers on the ground. There remains a complete dearth of documentary evidence regarding Mr. Jesus De Nasareth's actual identity and national origin

Order determining Mr. Jesus De Nasareth's lack of competency and ordering the statutory period of restoration described in 18 U.S.C. § 4241. *See* ECF # 20. Also on May 15, 2025, the Grand Jury returned an Indictment charging Mr. Jesus De Nasareth with one count of illegal entry pursuant to 8 U.S.C. § 1325 and one count of possession of firearm by a prohibited person in violation of 18 U.S.C. § 922(g)(5). *See* ECF # 21. Counsel for Mr. Jesus De Nasareth filed a notice of Insanity Defense and for examination under Title 18 U.S.C. § 4242. *See* ECF # 26. The Court granted the Motion for the § 4242 sanity examination and ordered that the resulting report be filed pursuant to the provisions of 18 U.S.C. § 4247(b) and (c). *See* ECF # 27.[2]

The Court received a second psychiatric evaluation report from the Bureau of Prisons on September 15, 2025. *See* ECF #29. The Court held a hearing regarding this report on September 16, 2025. *See* ECF # 31. Based on the findings of this report regarding Mr. Jesus De Nasareth's competency, the Court ordered an additional period of hospitalization. *See* ECF # 32.

The Court receive a third psychiatric evaluation report from the Bureau of Prisons on January 29, 2026. *See* ECF # 34. The Court ordered that Mr. Jesus De Nasareth be produced for a status conference regarding the B.O.P.'s request that Mr. Jesus De Nasareth's period of hospitalization be further extended. *See* ECF #37. The Court held an evidentiary hearing regarding Mr. Jesus De Nasareth mental status on March 17, 2026. *See* ECF # 40. As a result of that hearing, the Court ordered an additional four months of hospitalization. *See* ECF # 41.

The B.O.P. produced a fourth psychiatric evaluation to the Court on July 14, 2026. *See* ECF # 43. The Court held yet another hearing concerning Mr. Jesus De Nasareth's competency on August 20, 2026. The B.O.P.'s report of July 14, 2026 is now in evidence. *Id*. This report

---

[2] The Bureau of Prisons never undertook the sanity examination and never filed the report because Mr. Jesus De Nasareth was never determined to be fit for trial. *See* ECF # 29, p. 9.

concludes that Mr. Jesus De Nasareth remains incompetent to stand trial. Furthermore, the report concludes, with reference to Mr. Jesus De Nasareth's entire course of hospitalization and despite anti-psychotic drug treatment since the initial evaluation period, the prognosis for competency is poor, and that there is not a substantial probability that Mr. Jesus De Nasareth will be restored to competency. *See* ECF # 43, p. 12.

In anticipation that a Court finding that there is not a substantial likelihood of Mr. Jesus De Nasareth being restored to competency, the Bureau of Prisons forensic evaluators also addressed whether Mr. Jesus De Nasareth is a suitable candidate for civil commitment under Title 18 U.S.C. § 4246. *See* ECF # 43, p. 13. The B.O.P. conducted a risk assessment and concluded that Mr. Jesus De Nasareth does not meet the threshold criteria for civil commitment based on an evaluation of his potential for danger. Mr. Jesus De Nasareth has no history of violence, has never been diagnosed with a personality disorder, and has demonstrated no violent ideation during his hospitalization at FMC Butner. *See Id.* The report concludes that it is not recommended that a certificate of dangerousness be filed in this case. *Id.*

## II. LEGAL ARGUMENT

Mr. Jesus De Nasareth has been detained since April 14, 2025. He suffers from schizophrenia, has been found incompetent by multiple forensic experts during four separate evaluations, has been determined to be non-restorable after a long period of clinical treatment with anti-psychotic medications, and has been determined not to pose a danger to the community by the Department of Justice's own forensic professionals. Because the criminal trial of an incompetent defendant violates due process, there is no legal basis to proceed with this case, the Court should dismiss. *Cooper v. Oklahoma,* 517 U.S. 348, 354-355 (1996)

**A. Mr. Jesus De Nasareth is Not Competent and Unrestorable.**

18 U.S.C. § 4241 lays out the process and timing for competency determinations and related terms of commitment. A court may conduct a hearing to determine competency upon the motion of a party and a psychological examination. *See* 18 U.S.C. § 4241(a), (b). Where the court finds the defendant incompetent to stand trial, the court must commit the individual to the custody of the Attorney General to be hospitalized for treatment. *See* 18 U.S.C. § 4241(d). Such commitment is only:

> (1) for such a period of time, not to exceed four months, as is necessary to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward; and
>
> (2) for an additional reasonable period of time until—
>
> > (A) his mental condition is so improved that trial may proceed, if the court finds that there is a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward; or
> >
> > (B) the pending charges against him are disposed of according to law;
>
> whichever is earlier.
>
> If, at the end of the time period specified, it is determined that the defendant's mental condition has not so improved as to permit the proceedings to go forward, the defendant is subject to the provisions of sections 4246 and 4248.

18 U.S.C. § 4241(d).

The statute is clear. The Attorney General has four months to evaluate the defendant to see if competency improves. That period can be extended if the defendant has shown improvement with respect to competency, and if the court makes a finding that within proscribed additional time, he is likely to attain competency. *See* 18 U.S.C. § 4241(d)(2). In this case, Mr. Jesus De Nasareth

underwent a total of three four-month periods of restoration and remains incompetent despite the best efforts of the Bureau of Prison's medical professionals.

When a defendant has been found not restorable for competency purposes, he or she becomes subject to § 4246. *See* 18 U.S.C. § 4241(d). Section 4246 provides that if the facility housing the defendant certifies that the defendant:

> is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another, and that suitable arrangements for State custody and care of the person are not available, he shall transmit the certificate to the clerk of the court for the district in which the person is confined.

18 U.S.C.A. § 4246. FMC Butner, the facility at which Mr. Jesus De Nasareth has been treated, has not certified him to be dangerous and does not recommend such certification. *See* ECF # 43, p. 13. In the absence of such a certification, there is no apparent legal authority to further confine the defendant. The 5th Circuit has held that without a certification of dangerousness, there is no legal authority to hold a dangerousness hearing. *See e.g., United States v. Bonin*, 541 F.3d 399, 400-01 (5th Cir. 2008) ("Section 4246(a) established the director's certification as a necessary prerequisite to a dangerousness hearing; without a certification, a court ordinarily lacks statutory authority to conduct the hearing.").[3]

Likewise, where the individual is not found to be dangerous under § 4246, he or she must be discharged from the Attorney General's custody. *See United States v. Rivera-Guerrero*, 426

---

[3] Courts have recognized the holes in § 4246, which provides for a hearing on dangerousness in the event the facility so certifies, and discharge if the defendant is later found not dangerous, but which does not explain what happens to those not certified as dangerous, or otherwise not specifically found dangerous. Courts tend to agree, however, that the lack of clarity in the statute must be understood to require discharge in those situations. *See, e.g., United States v. Baker*, No. 08-cr-30002-001, 2010 WL 1742222, at *3 (W.D. Ark. Apr. 29, 2010) ("While the statute is silent as to precisely what course of action is to be taken if a 'certificate of dangerousness' be not issued, the Court believes it is fairly to be inferred from the language of the statute that, in the absence of the same, the defendant must be released.").

F.3d 1130, 1144 (9th Cir. 2005) (holding, after the expiration of the four month § 4241 period, the "defendant may be tried, if competent, or, if not, either civil commitment proceedings must be instituted against him under 18 U.S.C. § 4246 or he must be released.").[4] That is to say, where "the court finds that the defendant's mental condition has not so improved so as to permit the trial to proceed and that the defendant's release would not create a substantial risk of bodily injury to another person or serious damage to the property of another, the dictates of due process do not allow additional commitment to the Attorney General's custody." *See e.g., United States v. Duhon*, 104 F. Supp. 2d 663, 681 (W.D. La. 2000). In order to commit under § 4246, the Government bears the burden of proving the dangerousness of a defendant by clear and convincing evidence. *United States v. Dalasta*, 3 F.4th 1121, 1125 (8th Cir. 2021). The government cannot meet the burden of establishing Mr. Jesus De Nasareth's dangerousness in light of the forensic evaluator's uncontradicted expert finding that Mr. Jesus De Nasareth does not meet the threshold criteria for civil commitment based on dangerousness.

## III. CONCLUSION

Mr. Jesus De Nasareth is and is likely to remain incompetent. Because the criminal trial of an incompetent defendant violates due process, the case should be dismissed. *Cooper v. Oklahoma,* 517 U.S. 348, 354-355 (1996). Federal law does not authorize the indefinite commitment of

---

[4] *See also United States v. Chaudhry*, 630 F.3d 875, 877 (9th Cir. 2011) (noting that after defendant was found not dangerous under § 4246, he was ordered released); *United States v. Williams*, No. 11-cr-8022-PCT-GMS, 2013 WL 3864258, at *6 (D. Ariz. July 25, 2013) ("If a defendant is found incompetent, not likely to attain competency in the reasonably foreseeable future, and not dangerous within the meaning of 18 U.S.C. § 4246, the Bail Reform Act may not apply and that defendant may be released under § 4246(e)."); *United States v. Soberanis*, No. 1:09-cr-0361, 2012 WL 4092491 (N.D. Ga. Sept. 14, 2012) (finding defendant not dangerous under § 4246 and referring for a hearing to set conditions of release); *United States v. West*, No. 03-CR-000128WYD, 2007 WL 1851305, at *1 (D. Colo. June 26, 2007) ("I further found that civil commitment proceedings were not appropriate since no certificate of dangerousness was issued as required by 18 U.S.C. § 4246. Since Defendant was incompetent but was not found to be dangerous within the meaning of § 4246, I found that Defendant must be released from custody.").

defendants found incompetent to stand trial. Rather, 18 U.S.C. §§ 4241, *et seq*., provide procedures for the limited confinement of incompetent defendants, in order to assess their ability to be restored for trial and, in some cases, their potential dangerousness. If a defendant is not restorable to competency, the only remaining question is future dangerousness. *See* 18 U.S.C. § 4241(d). However, if the facility at which the defendant is held does not certify his dangerousness, or if the defendant is expressly found not dangerous, there is no longer any legal basis for continued confinement, and the defendant should be discharged. Mr. Jesus De Nasareth has been determined to be non-restorable. The government's forensic evaluators concluded he does to meet the criteria for civil commitment and do not recommend the issuance of a certificate of dangerousness. This case should be dismissed and Mr. Jesus De Nasareth should be released.

WHEREFORE, for the foregoing reasons, Mr. Jesus De Nasareth requests that the Court dismiss the Indictment.

Respectfully submitted,

MAUREEN SCOTT FRANCO
Federal Public Defender

/s/ Chris Carlin
CHRIS CARLIN
Supervisory Assistant Federal Public Defender
Western District of Texas
108 N. 10th Street
Alpine, Texas 79830
(432) 837-5598
(432) 837-9023 (Fax)
*Attorney for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 21st day of August 2026. I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Kevin Cayton
United States Attorney's Office
2500 Hwy 118 N., Ste. A200
Alpine, TX 79830

/s/ Chris Carlin
CHRIS CARLIN
Supervisory Assistant Federal Public Defender

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**PECOS DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| | § | |
| **V.** | § | **CASE NO. 4:25-CR-107** |
| | § | |
| **CHRISTO JESUS DE NASARETH** | § | |

**ORDER**

On this date came on to be considered the Defendant's Motion to Dismiss the Indictment. The Court having considered the premises, is of the opinion that the same should be and is hereby GRANTED.

It is therefore ORDERED that the Defendant's Motion (Doc. No. ____) is hereby GRANTED, and the Indictment in this cause is DISMISSED.

SO ORDERED on this the______day of____________, 20___.

_______________________________
DAVID COUNTS
UNITED STATES DISTRICT JUDGE